## Malone & Son *v.* Phila. & Reading R. R., Appellant.

[Marked to be reported.]

#### *Contract—Parol alteration of written contract.*

A parol alteration of a written contract draws to its nature the retained stipulations of the old contract and reduces the whole to a parol contract, the written contract to be used no further than to mark the terms and extent of the new stipulations.

Such an effect is not produced by a slight or immaterial variation of the written contract. but if the evidence is conflicting, it is for the jury to say whether or not there was an essential alteration changing the character of the work to be done by the contractor, and largely increasing the obligation of the defendant. If the jury so find, the whole contract is, as to its nature, reduced to parol, but the stipulations not modified or changed, remain.

#### *Practice—Pleading—Evidence—Copy of contract—Act of May* 25, 1887.

Where a written contract has been so essentially changed by the parties as to become a parol contract, it is not necessary for the plaintiff, under the act of May 25, 1887, P. L. 271, to file a copy of the written contract with his statement, and in such a case the written contract may be admitted in evidence, although no copy was filed.

#### *Arbitration—Contract.*

A stipulation in a railroad construction contract provided that " the decision of the chief engineer shall be final and conclusive in any dispute which may arise between the parties to this agreement, relative to or touching the same; and each and every of said parties do hereby waive any right to action, suit or suits, or other remedy in law or otherwise, by virtue of said covenants, so that the decision of said engineer shall, in the nature of an award, be final and conclusive on the rights and claims of said parties." *Held*, that such stipulation did not require that the engineer's award, as given to the contractor, should be signed by him in order to be binding on the company; in such a case there is a sufficient compliance with the contract if a copy of the award, signed by the engineer, is retained by the railroad company, and an unsigned copy delivered to the contractors.

#### *Decision of engineer where contract is changed.*

Where there is an essential parol alteration of the written contract, and there is no stipulation providing that the engineer's decision shall be final as to matters of dispute arising under the contract as changed, the decision of the engineer is not binding; and where such decision covers indiscriminately the whole work it cannot stand as to a part.

#### *Practice—Improper wording of points.*

It is improper to frame points for charge as follows: " If the jury believe the plaintiff's evidence, the verdict must be for the plaintiff," etc.

The object of written points is to obtain from the court specific rulings on the law applicable to the facts; if the points are so worded that their meaning is concealed or obscure the court is not bound to answer them.

*Assignments of error—Evidence.*

Assignments of error to the admission or rejection of evidence are not in compliance with rule XXIV, where the purpose of the offer and the reason for its rejection or admission are not disclosed.

*Harmless error not ground for reversal.*

An error which does the appellant no harm is not ground for reversal.

Argued May 16, 1893. Appeal, No. 102, Jan. T., 1893, by defendant, from judgment of C. P. Lancaster Co., June T., 1890, No. 19, on verdict for plaintiffs, R. A. Malone & Sons. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Assumpsit for balance alleged to be due under contract to enlarge tunnel and build bridge. Before McMULLEN, J.

At the trial it appeared that, by agreement in writing, dated May 21, 1889, plaintiffs contracted to do all the work in the enlargement of the Manayunk and Phœnixville tunnels, with the approaches to the same, together with a stone arch bridge across the Schuylkill river at the north end of the Phœnixville tunnel. Plaintiffs introduced evidence which tended to show that after the work was begun in the Phœnixville tunnel the plan of lowering the tunnel at the bottom, as originally contemplated and provided for in the contract, was abandoned, and plaintiffs were directed by defendant to remove from the top of the tunnel throughout its entire length about a foot of rock, amounting to over seventeen hundred cubic yards of rock. The evidence tended to show that this was much more difficult work than the removal of the rock ballast and loose material from the bottom, and imposed upon the contractors great additional cost and expense.

[Plaintiff offered in evidence the written agreement of May 21, 1889.

By Mr. Brown : We offer it simply for the purpose of showing how we began the work, and only for that purpose ; because it is not our agreement. We do not offer it as evidence of the agreement under which we did the work, but as evidence of the agreement under which we began the work.

By the Court: You may offer the agreement in evidence as the agreement under which you began the work, and if there were any alterations made afterwards, you can prove that specially at the proper time. We will go on with the evidence. The original agreement is in evidence.

By Mr. Brown: For the purpose for which we offered it.

By Mr. North: The written agreement was objected to, because a copy of it was not attached to the plaintiffs' statement filed in the case.

Objection overruled and exception.] [1]

When R. A. Malone was on the stand he was asked:

" Q. Did you or not lower the tracks according to that plan ? " Objected to by defendant's counsel. Objection overruled and exception. " A. I did not." [2]

Thirty-two other offers of evidence were admitted or rejected by the court, under objection and exception. The assignments of error relating to them referred to the appendix to the paper book by page where the evidence was to be found, and quoted the answers to the questions admitted, but did not disclose the purpose of the offers, or the reason for their rejection or admission, or the connection in which the offers were made. [3–34]

The court charged in part as follows :

" [It may be further remarked, that, although the company finished the work in March, 1890, no estimate appears to have been furnished to the plaintiffs until July of that year, until nearly two months after the plaintiffs had brought their suit, when a type-written document purporting to be an award of the chief engineer was served on the plaintiffs, accompanied by an estimate and statement of moneys expended by the company in finishing the work. It was not signed by any one, and, therefore, was not binding upon either party, as no suit could have been maintained upon it by the plaintiffs. This clause in the agreement is, therefore, no bar to this suit, and the plaintiffs may recover such amount as they have shown to you they are honestly entitled to.] [35] . . . .

" [The contract provides also that at the approaches to the tunnels the rock cuts must be excavated to such widths as to allow of shifting and widening of tracks, as per accompanying plans ; and the plans show by red lines how the tracks were to

be shifted, as well as the space intervening between the rails
before alterations, and the foot of the embankment; they do
not show the width of the excavation required to be made nor
the depth of the cuts, and there is nothing to show how much
space the company required to be left between the rails after
shifting of tracks and the foot of the slope.] [36] . . . .

   " [But the plaintiffs claim that at the time they made their
proposal, there was exhibited to them a document called a
' quantity sheet,' showing the quantities of material to be taken
out, and that this paper showed the amount of excavation from
the approaches to be two hundred cubic yards.   Mr. R. A.
Malone testified that this quantity sheet was exhibited to him
in the chief engineer's office; that it showed two hundred
cubic yards, and that he made a memorandum of it, and he
was left under the impression that this was the quantity to be
removed.   Mr. Nichols, the chief engineer, testifies that there
was a quantity sheet in the assistant chief engineer's office,
where the plans and everything pertaining to the work was;
that this quantity sheet showed four hundred and fifty cubic
yards; that he does not know whether any of the contractors
who came to bid on the work saw it. · He also says he did tell
Mr. Malone that the quantities given by them, the defendants,
were only approximate, and he must not be governed by it
but must rely on his own judgment from an inspection of the
work; that the defendant's approximate estimate was four hun-
dred and fifty yards, but the company would not be bound by
that estimate, and he must rely on his own estimate.   Now,
we say to you that if Mr. Malone was so informed before mak-
ing his proposal, it was notice to him to make further inquiry
and examination, and unless the plaintiffs show that upon mak-
ing such inquiry there was deception practiced on them, they
can have no claim for extra compensation.   But if he was
given to understand that two hundred yards was the quantity,
or even four hundred and fifty yards, without being warned
that the company would not be bound by those figures, and
that he should make his own examination, and he relied on
those figures, and was afterwards compelled to remove sixteen
hundred cubic yards, the discrepancy was so great that it would
amount to a fraud on the plaintiffs, and he may recover for the
excess such price as he has shown it to be worth.   Approxi-

mate means 'near to;' and if a contractor, as was testified by Mr. Stevens, could make an approximate calculation from the lines on the draft, an engineer making up a quantity sheet should certainly come closer to the correct figures than seems to have been done in this case.] " [37]

Plaintiffs' points were among others as follows:

" 2. If the jury believe the evidence of the plaintiffs, the verdict must be for the plaintiffs for the above amount of the extra work on force account, and in addition thereto for $5,000 for the extra work done on the roof of the tunnel, together with interest thereon from March 30, 1890. *Answer:* If the jury believe the roof cutting was not to be substituted for the bottom cutting in the contract, then they should find for the plaintiffs so much as the work done on the roof was actually worth." [38]

" 3. If the jury believe the evidence for the plaintiffs, there must be a verdict for plaintiffs for the above two items, and in addition thereto for $2,000, with interest thereon, for the work done on the approaches to the Phœnixville tunnel. *Answer:* If the jury believe the plaintiffs' evidence, they should find for the plaintiffs such amount as the excess of work over the quantity given to Malone was actually worth, that is, on the approaches to the tunnel." [39]

" 4. If the jury believe the evidence for the plaintiffs, the verdict must be for the plaintiffs for the aggregate amount of the above three items, and, in addition thereto, for $16,997.35, balance due on the contract work of the tunnel, together with interest thereon from the 30th day of March, 1892, to date. *Answer:* The verdict should be for the first of the above three items, and so much of the second and the third as the jury may find due under instructions already given, together with the balance of the contract price remaining after deducting all payments already received—the $2,000 agreed upon for money and materials; the $1,225 for canal service, and whatever the company necessarily expended, if anything, in completing the plaintiffs' work, with interest from March 30, 1890." [40]

Defendant's points were as follows:

" 1. The only item the plaintiffs may recover in this action is the sum of $3,026.06, with interest, for their force, extra or 10 per cent work, as admitted and agreed upon, being the fourth item in the statement filed in the case by the plaintiff." Refused. [41]

" 2. As the contract of May 21, 1889, between the plaintiffs
and the defendant required the plaintiffs to complete to the sat-
isfaction and acceptance of the chief engineer of said defendant
all the graduation, masonry and such other work as may be re-
quired in the enlargement of Manayunk and Phœnixville tun-
nels with the approaches to the same, together with the stone
arch bridge across the Schuylkill river at north end of Phœnix-
ville tunnel, and R. A. Malone, one of the plaintiffs, having
admitted on the stand, as witness for the plaintiffs, that the
plaintiffs did not complete said work to the satisfaction and ac-
ceptance of said chief engineer, there can be no recovery in this
action by the plaintiffs of any compensation for said work.  *An-
swer:* We refuse this point, and say that the company having
exercised their option of completing the work and charging the
cost to plaintiffs, the plaintiffs may recover in this action such
balance as may be due to them." [42]

" 3. As the plaintiffs, by the said contract, were only entitled
to a final estimate when all the work embraced in the contract
was completed agreeably to the specifications, and in accordance
with the directions and to the satisfaction and acceptance of the
chief engineer of the defendant, and as they have not done this,
they are not entitled to their final estimate and cannot recover
for said work in this action.  *Answer:* This point is refused.
The company having finished the work and charged the same
to plaintiffs, they cannot defeat a recovery for balance due by
withholding the final estimate." [43]

" 4. The plaintiffs cannot recover in this action for any work
done by them in the enlargement of the Manayunk and Phœnix-
ville tunnels with the approaches to same, together with the
stone arch bridge across the Schuylkill river at the north end
of the Phœnixville tunnel, as all work so done was provided for
by the contract, and plaintiffs have no final estimate therefor."
Refused. [44]

" 5. As the plaintiffs and defendant by their contract of
May 21, 1889, mutually agreed that the decision of the chief
engineer of the defendant shall be final and conclusive in any
dispute arising between the parties to said agreement, relative
to or touching the same, and have waived any right of action,
suit or suits, or other remedy in law or otherwise, so that the
decision of the said engineer shall, in the nature of an award,

be final and conclusive on the rights and claims of the parties, the decision of the said engineer in the nature of an award, dated July 16, 1889, and given in evidence, is final and conclusive on the rights and claims of the parties to this suit, and prevents a recovery by the plaintiffs in this action, except the sum agreed on upon the trial, for extra or force work. *Answer :* This we refuse for the reasons already given in our charge." [45]

Verdict and judgment for plaintiffs for $31,302.02. Defendant appealed.

*Errors assigned* were (1–34) rulings on evidence as above ; (35–45) instructions ; quoting bills of exceptions and evidence and instructions.

*H. M. North, E. D. North* with him, for appellant.—The contract between the parties was in writing ; plaintiffs did not declare on a written contract, and as they had not declared on it nor attached a copy of it to their statement, they could not give it in evidence : Act of May 25, 1887, P. L. 271.

The engineer's award was final : Mentz v. Armenia Fire Ins. Co., 79 Pa. 478 ; Gray v. Wilson, 4 Watts, 39 ; Leebrick v. Lyter, 3 W. & S. 365 ; Wilson v. Getty, 57 Pa. 266 ; Boswell's Ap., 3 Penny. 305 ; Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205 ; Faunce v. Burke, 16 Pa. 469 ; Snodgrass v. Gavit, 28 Pa. 221 ; Lauman v. Young, 31 Pa. 306 ; Fox v. Hempfield R. R., 14 Leg. Int. 148 ; North Lebanon R. R. v. McGrann, 33 Pa. 530 ; McCahan v. Reamey, 33 Pa. 535 ; Williams v. Danziger, 8 W. N. 21 ; Irwin v. Shultz, 46 Pa. 74 ; Reynolds v. Caldwell, 51 Pa. 298.

If there was a final estimate, which was erroneous, and the contractors' covenants were broken, an action at law could not be maintained upon it, but resort must be had to the tribunal appointed by the agreement : O'Reilly v. Kerns, 52 Pa. 214 ; O'Loughlin v. Jefferson Co., 56 Pa. 62 ; Backus's Ap., 58 Pa. 186 ; Howard v. Allegheny Valley R. R., 69 Pa. 489 ; Mentz v. Armenia Fire Ins. Co., 79 Pa. 478 ; Quigley v. De Haas, 82 Pa. 267 ; Hartupee v. Pittsburgh, 97 Pa. 108 ; Connor v. Simpson, 104 Pa. 440 ; Hostetter v. Pittsburgh, 107 Pa. 419 ; Snodgrass v. Gavit, 28 Pa. 221 ; Rea's Ap., 13 W. N. 546 ; Lauman v. Young, 31 Pa. 306 ; Whart. Ev. §§ 800, 870 ; Leech v.

Caldwell, 5 A. L. R. 280 ; Robinson-Rea Mfg. Co. v. Mellon, 139 Pa. 257 ; Fulton v. Peters, 137 Pa. 613 ; Fayette Co. v. Laing, 127 Pa. 119; Vicary v. Moore, 2 Watts, 451 ; Carrier v. Dilworth, 59 Pa. 406 ; McCauley v. Keller, 130 Pa. 53.

*J. Hay Brown, W. U. Hensel, J. L. Steinmetz* and *J. E. Malone* with him, for appellee.—The testimony of plaintiffs established clearly that the written contract was modified and materially changed ; it then, of course, became a parol contract, and was treated as such by plaintiffs, and the damages claimed are for its breach : Vicary v. Moore, 2 Watts, 457.

A prior agreement under seal may be referred to by a subsequent parol agreement, and made part of it, so that both shall form but one parol agreement, and assumpsit be maintained : Spangler v. Springer, 22 Pa. 454.

The engineer could not say what the agreement ought to be, but simply what it was : Drhew v. Altoona, 121 Pa. 401.

OPINION BY MR. JUSTICE DEAN, October 2, 1893

The plaintiffs, by a written agreement with defendant, on 21st of May, 1889, contracted to do the grading, rock-cutting, masonry and other work required in the enlargement of Manayunk and Phœnixville tunnels, and approaches to same, also certain work upon the stone arch bridge across the Schuylkill at north end of Phœnixville tunnel. The work was to be done in a workmanlike manner according to elaborate plans and specifications which formed part of the agreement, under the direction of, and to the satisfaction of, defendants' chief engineer, all to be completed by the following 22d of September. Defendant was to pay for widening Manayunk tunnel, $18,000 ; for Phœnixville tunnel and approaches, including stone arch bridge, $54,000.   Payments were to be made by the usual monthly estimates, but ten per cent was to be retained until the work was completed, when, if performed according to the contract and satisfaction of the chief engineer, a final estimate was to be had, and payment made within thirty days. The plaintiffs were to commence the work within ten days, and prosecute it with such force as the engineer should deem necessary for its completion, as provided in the contract, and if they should not so prosecute the work, then the chief engineer was

authorized to employ such workmen at such wages as in his judgment were necessary to the completion of the work, and charge the cost as so much money paid on the contract. Then came this final stipulation:

" And it is mutually agreed and distinctly understood that the decision of the chief engineer shall be final and conclusive in any dispute that may arise between the parties to this agreement relative to or touching the same; and each and every of said parties do hereby waive any right of action, suit or suits, or other remedy in law or otherwise, by virtue of said covenants, so that the decision of said engineer shall, in the nature of an award, be final and conclusive on the claims of said parties."

The plaintiffs began the work, and claimed to have completed it about February 15, 1890, when they quit; the·defendant, alleging the work was not performed as required by the contract, employed workmen and finished it. At the time they quit, plaintiffs had been paid $51,000 of the $72,000 specified in the contract; they claimed the remainder, $21,000, and, in addition, about $7,000 for work done under a parol agreement, by a different and more costly method than that specified in the written contract, and for work extra to the contract. The defendant denied plaintiffs' right to any amount outside the contract price, and alleged there should be deducted from this the cost of completing their unperformed contract, about $9,000, which, then, at most, would have left only about $12,000 due them. And defendant further contended, that as the engineer, under the arbitration clause of the agreement, had decided only $12,111.34 was due, this was all they could recover, and that amount not in this suit, but in an action on the award.

It is proper to say here, that there is no intimation that the authority of the chief engineer, as arbiter of disputes, was imported into, or continued in the alleged new parol contract. If his functions survived, they were confined wholly to disputes under the written contract. His decision, being after it was finished, necessarily embraced the whole line or locality of the work. He did not attempt to draw a line of distinction between the work done by plaintiffs under the written agreement, and that done by them under the alleged parol agreement. The fact of a parol agreement was wholly ignored by him. So

it is not worth while to inquire, whether the jurisdiction of the engineer might, even if there was a parol agreement, have been exercised over matters not affected by it in the written one. The decision covered indiscriminately the whole work, and cannot stand as to part. He says in the decision: "I have carefully considered all the points involved in the settlement for the work done by R. A. Malone & Sons in compliance with the agreement entered into between you under date of May 21, 1889, for the enlargement of Manayunk and Phœnixville tunnels." He then, among other things, decides they did not put on enough of men, and did not finish the work as required by the written contract. He does not take into consideration the fact, alleged by plaintiffs, that, when the rock-cutting in the Phœnixville tunnel was about half done, by agreement, the method of doing it was entirely changed; and does not consider whether, under the new method, it was left unfinished. He passes on the work on the ground covered by the written and alleged parol contracts, without attempting to separate them. If, then, as a fact there was a parol agreement, the decision embraces to a considerable extent matters covered by it; for this, there is no evidence of authority in the engineer, and whether his authority as to disputes under the written agreement, not affected by the new one, continued to exist or not, his decision made no distinction as to the rights of plaintiffs. Therefore, the decision must, as a whole, stand, if there was no alteration of the written agreement, or fall if there was.

At the trial, under the instructions of the court upon the evidence, there was a verdict in plaintiffs' favor for $31,203.02. This, however, included an item of $3,026.06, which defendants admitted to be due plaintiffs for extra or force work. It was also undisputed by plaintiffs, that defendants were entitled to a credit of $2,000, which they had agreed to pay for removing rock, and also $1,225 for canal service rendered by defendants to plaintiffs.

As the case was tried in the court below, the real points of contention were:

1. Was the written contract altered in material particulars by a subsequent parol contract?

2. If there was such alteration, then, were the plaintiffs, under the new or altered contract, entitled to an increased sum of money for the work done?

If there was such alteration, then the new contract, as is said in Vicary v. Moore, 2 Watts, 457, and the numerous cases following it, drew to its nature the retained stipulations of the old contract, and reduced the whole to parol, the written contract to be used no further than to mark the terms and extent of the new stipulations.

According to the written contract, the plaintiffs were to be paid in the lump $54,000, for enlarging the Phœnixville tunnel and its approaches. The height of the tunnel was to be increased by removing the rock bottom to the depth of a foot for a length of nine hundred and twenty-five feet. Plaintiffs alleged that, about the time one half this work was completed, it was agreed that, instead of taking up the bottom to secure the increased height, the rock top should be taken down, and thereafter the work was so done. That a change by consent of both parties was made, is established by the evidence of the witnesses on both sides. Defendants deny that it was a material alteration, or that they specially requested it. It has never been held that slight and immaterial variations by the consent of the parties in a written contract work an entire change in the nature of the contract, and the rights and obligations of the parties. Such changes, which could not have been reasonably foreseen by either party, often, during the progress of the work, are found desirable by one or the other, and sometimes by both. When slight changes are so made, they affect not the nature of the written contract, or the stipulations contained in it. Here, however, the plaintiffs allege, the alteration was material, in that it increased the cost of the work about six times that specified in the written contract, and greatly increased the difficulties and dangers of its prosecution. As to this, there was a decided conflict in the evidence. There was the same conflict as to the alleged change in the excavation of the approaches, plaintiffs alleging the contract was changed, so as to increase the work from two hundred cubic yards to sixteen hundred.

The evidence was for the jury. If they found the parol agreement was an essential alteration of one of the principal stipulations of the written one, greatly changing the character of work to be done by plaintiffs, and largely increasing the obligation of defendant, then, the whole contract was, as to its nature, reduced to parol, but the stipulations not modified or changed, remained.

Appellants, in their 5th written prayer for instructions, asked the court to peremptorily instruct the jury, there could be no recovery of any part of plaintiffs' claim, except the undisputed item of $3,026.06 for extra force work, because the decision of the engineer under the written contract was final and conclusive. This the court refused, for reasons given in the general charge. The reason there given is that, as the award delivered to plaintiffs was not signed, it was not binding on either party. We do not think the reason given warranted the conclusion. The decision of the engineer as " to any dispute which may arise between the parties to this agreement, relative to or touching the same," is all that is stipulated for; no particular form em-bodying the decision is specified; it is to be in the " nature of an award," not in the form of one. To say that the decision shall be in writing signed by the engineer, on every point of dispute which might arise during the work, relative to or touch-ing the agreement, is to say a great deal more than the parties themselves said. A reasonable interpretation of this clause, in view of its object, is, that the decision of the engineer on a point in dispute was to be made, and the parties notified of it; that was the substance ; the form was immaterial. Here, the decision was made, put in writing, and signed by the engineer, and an unsigned copy delivered to plaintiffs, the original re-maining in the office of the company. If that was all there was in the case, both the court below and we would be bound to treat the decision as final and conclusive between the parties.

But, did the ruling of the court do the defendant any harm ?

There was no error in refusing the peremptory affirmation of the 5th point, for it was based on facts only averred by de-fendant, not admitted or indisputably established ; therefore, all the defendant could properly ask, on the subject embraced in the point, was an instruction that, if the jury found the written agreement had not been altered by a subsequent parol one, the decision of the engineer was final and conclusive. A simple negative, as the point stood, would have been a correct answer. But the court refused the point, and referred the jury to the reasons given in the general charge, which, as we have seen, were not sufficient to warrant the opinion that the award was not conclusive. The defendants then, in their 35th assign-ment, specify this part of the general charge as error; and so

it is, technically; but, if it can be certainly said, the error in no way affected the verdict, we will not reverse.

The verdict is for $31,203.02. In substance, the jury was plainly instructed, if there was no parol contract which essentially changed the written one, or if, by such change, taking down top instead of taking up bottom, there was imposed no materially increased burden on plaintiffs, or if plaintiffs contracted for the approaches, relying on their own estimate of 200 cubic yards, and not on defendant's "quantity sheets," there could be no recovery for anything beyond the contract price in these particulars; further, they were pointedly instructed, if plaintiffs had not done the work as agreed upon, or had left a part undone, defendants were entitled to a deduction for the cost of doing what plaintiffs had neglected or refused to do. The jury found against defendants in each particular, for they found almost the amount of plaintiffs' claim on the items in dispute. The written contract price was $72,000, to which was added the admitted extra force work, $3,026.06, making, together, $75,026.06. On the other side, plaintiffs admitted cash payments, $51,000; due defendant for removing rock, $2,000; and for canal service, $1,225; making total credits of $54,225, and leaving a balance of $20,801.06; this, with interest to date of verdict, made $24,122; if to this be added plaintiffs' disputed claim of $7,000, the sum is just about the amount of the verdict. Under the clear instructions of the court on the evidence, this verdict could only have been arrived at by finding that a parol contract was made, changing the written one, and warranting the allowance of plaintiffs' increased claim. So, even if the court had charged, if there was no parol contract, then the decision of the engineer is final and conclusive, but if there was, then plaintiffs could recover such increased amount as the evidence showed them to be entitled to, the result would have been the same. There would have been no change in the evidence, and none in the fact. Precisely the same testimony, which, as the case was tried, established the plaintiffs' right to the additional $7,000, would, if it had been tried as both we and the learned counsel for defendant say it ought to have been tried, have established the inconclusiveness of the engineer's decision. It is a settled rule of this court, that an error which did the appellant no harm is not ground for re-

versal.  Therefore the 35th and 45th assignments of error are
overruled.

The 38th, 39th and 40th assignments are to the wording of
plaintiffs' points.

Each of these points commences: " If the jury believe the
evidence of plaintiffs the verdict must be for plaintiff," etc.
Such language certainly fails to express the idea intended by
the learned counsel who framed the point.  We have had oc-
casion more than once to signify our disapproval of this form.
It is doubtless meant to request the court to charge the jury
that if on the evidence they should find certain facts, then cer-
tain conclusions should follow ; but the language of the point
does not necessarily imply the thought intended.  " If the jury
believe the evidence for plaintiffs."  What evidence ?  Part,
or all of it ?  If they do believe any part or the whole of it, it
may only tend to prove the fact sought to be established; some
of the evidence they may not believe, and still a preponderance
of the whole evidence may produce conviction.  But here, the
answers of the court directed attention to the facts which it
was incumbent on plaintiffs to prove by the evidence, and con-
sequently the jury were not misled.  As the points were fram-
ed, the court might very properly have declined to answer
them.  The object of written points, as we understand it, is to
obtain from the court specific rulings on the law applicable to
the facts ; if they are so worded that their meaning is conceal-
ed or obscure, the court is not bound to answer them.

As to the first assignment of error, to the admission in evi-
dence of the written agreement, when no copy was filed, we
think there was no error.  Plaintiffs' claim was based on an
agreement resting in parol.  The inducement to the new one
was the existence of the old one, but if the new one was made
out, the old became parol.  In this view of the case, the action
was not founded on the writing, and plaintiffs were no more
bound to file a copy, than a copy of a receipt, engineer's meas-
urement, or any other item of written evidence.  The plaintiffs'
statement avers a parol contract only.  The act of 1887 says :
" In assumpsit, the plaintiff's declaration shall consist of a con-
cise statement of the plaintiff's demand, as provided by the 5th
section of the act of 1806, and shall be accompanied with copies
of all . . . . contracts . . . . upon which the plaintiff's claim is

founded." Not being founded on the written contract, it was not necessary to file a copy of it.

Of the thirty-four assignments of error to the admission or rejection of evidence, this first is the only one which discloses the purpose of the offer and the reason for objecting to it. Going from the formal assignments to the stenographer's notes of testimony, they are just as meagre; we find nothing, which, with the most liberal construction, will warrant us in treating the alleged errors as properly assigned under rule 24. It is possible a prolonged search through the manuscript record on file would be rewarded with the information the paper book ought to give. But counsel ought not to ask this of us, and certainly we have not the time for the work. Under the rule mentioned, all these assignments are held as none. The 36th, 37th, 41st, 42d, 43d, and 44th assignments all raise questions which have, in effect, been passed on in our disposition of the 35th and 45th, and demand no further notice.

All the assignments of error are overruled, and the judgment is affirmed.