## Diggs, Appellant, *v.* Taylor and Company, Inc.

Argued January 11, 1938.  Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Milton H. Belber,* for appellant.

*Robert T. McCracken,* with him *Laurence H. El-dredge* and *Montgomery & McCracken,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 21, 1938:

Appellant, a tax accountant, in 1925 made an oral agreement with Taylor and Company, appellee, whereby he should receive as a fee 25 per cent of all "refunds" of appellee's income taxes for prior years procured, through his services, from the United States Government. Appellant also used the expression "25 per cent of what we saved them," which we deem synonymous with "refunds" as used in this connection. Certain payments were refunded to appellee by the government and appellant received one-quarter of these as his fee. Additional claims for refunds were refused and a suit therefor against the government was begun in the local Federal Court.

In 1928 the government also assessed against appellee a deficiency tax of $9,197.17 for the year 1926. Appellant handled this claim and a proceeding to contest it was begun before the Board of Tax Appeals. Then followed protracted negotiations between appellant, representing appellee, and the taxing authorities in Washington. In June, 1933, the latter apparently made a proposition to appellant to settle both suits by the payment to appellee of $12,000, and interest, as additional refunds for years prior to 1925, less the deficiency tax for 1926, which would mean a net payment in the neighborhood of $6,000. Appellant communicated this offer to counsel for appellee and several letters passed between him and John M. Taylor, appellee's president. Appellant proposed a change in the agreement as to his compensation, in view of the proposed settlement with the government. On July 3, 1933, appellant wrote Taylor: "If we accept the government's proposition now we know you will get about $3,000 cash plus interest after paying the $9,000 you owe for 1926, while if we try a

lawsuit and lose it you will get nothing and have to pay the $9,000 for 1926. . . . My proposition with respect to our fee was that it remain just as much contingent as it is now but as the fee is now we are to receive only 25% of the amount saved for the years 1917 to 1921, plus interest which would make our fee amount to probably between $3,000 and $4,000. My idea was that the fee might be changed so that we should receive all of the net refund after paying your 1926 taxes up to an amount not in excess of $8,000 or $9,000, which would be just about sufficient to cover cost of handling the case."

Taylor in reply requested a full review of the whole situation. Appellant then wrote him, on July 10, 1933:

"The Government now offers to give us a further refund of $12,000 which together with interest should amount to a total refund of somewhere between $14,000 and $16,000 depending on how the interest is computed. . . . In view of the fact that we have had so much expense and the case has turned out especially unfortunate from our standpoint, we think it would be fair for you to give us, as our fee, all of the net refund paid to you after the Government deducts the $9,100 you owe for 1926. That adjustment would work out this way— you would be allowed a refund of $12,000. The interest should run about $3,000 or more, making a total of about $15,000. From this $15,000 the Government will deduct the $9,100 that you owe from 1926 and we want you to give us, as our fee, the remainder unless that remainder should exceed $9,000 and in event it should exceed $9,000 you keep the balance over $9,000."

Taylor replied that he was reluctant to change the agreement as to fees, but did not wish to assume an arbitrary position, and "after setting the matter forth as I understand it, I am entirely willing to leave this for you to decide and you are authorized to proceed accordingly." Appellant then sent a formal offer to the government to settle on the basis referred to.

In April, 1934, however, appellant was notified by the attorney general's office that this offer had been rejected. The government made a counterproposal that appellee abandon altogether its claims for further refunds and in return the claim for the 1926 deficiency tax would be withdrawn. After some negotiations appellee accepted this basis of settlement and the parties in effect exchanged mutual releases.

Appellant's claim is to recover from appellee compensation consisting of one-quarter of the amount of deficiency tax assessed against appellee for the year 1926, plus interest to the date of settlement (amounting to $12,797.17), or the sum of $3,199.29. His contention is that since the cross claims above referred to were withdrawn by each party, this amounted to a payment by the government to appellee of tax refunds in a sum precisely equivalent to the amount of the government's deficiency tax claims. Although no money actually changed hands, the settlement by mutual set-off, it is said, accurately evaluates the claim surrendered by the government and this constituted a refund made to appellee. Appellant argues that if the government had paid appellee refunds in the sum mentioned, and appellee had immediately paid this sum back to the government on its tax claim, the situation would have been no different from the result which actually was reached, but in such case he would clearly be entitled to the amount now claimed.

Unfortunately for this argument, no such thing occurred. No money was ever paid, and for appellant to be entitled to his agreed percentage as a fee it was essential that a refund be made. The meaning of "refund" is well known. There was merely a mutual relinquishment of opposing claims, each of which, as both parties to this suit realized, was of doubtful validity. It is impossible to state with accuracy what the value was of the consideration for appellee's withdrawal of its claim

for refunds. Certainly it cannot be arbitrarily fixed at the amount of the deficiency tax computed by the government. Obviously what the parties had in mind when the oral agreement was first reached was a fixed percentage of funds actually in hand paid to appellee, and not the undetermined value of a claim voluntarily surrendered and never liquidated.

In this aspect the case has some similarity to *Wooldridge v. Bradbury*, 185 Ky. 587, 215 S. W. 406, and *Underwood v. Rich*, 48 Ga. App. 550, 173 S. E. 224, where the question raised was whether a party, being entitled to a percentage out of a recovery of money, had any right to the same until the money was actually paid, and the right was denied. In the former case it was held that attorneys were entitled only to the net amount "recovered," and not to the gross amount of the claim allowed without deduction of a set-off.

The court below denied appellant's claim on a different ground, namely, that appellant in his letter to Taylor of July 10, 1933, made what in substance was an offer to rescind the old agreement as to a percentage fee and to take instead the net amount of refund paid by the government after deduction of the 1926 deficiency tax. It was held that this offer was accepted by Taylor in his reply, on behalf of appellee, and that since no net amount was ever paid, plaintiff never became entitled to a fee. This interpretation of the correspondence cannot be sustained. The letters make it clear that the taxing officials at first offered to settle on a basis much more favorable to appellee, which if carried out would have resulted in a substantial payment to appellee in excess of the deficiency assessment. Appellant's offer to change his agreement as to fees was obviously conditioned on his success in effecting such a settlement. The government later withdrew its offer and a different settlement was reached. Hence appel-

lant's offer and the new agreement, if the offer can be said to have been accepted, never took effect, the condition on which it was based having never occurred. This is the construction of the understanding which is fairest to all concerned, and the only one which comports with the situation of the parties.

Appellant's right against appellee, if he has any, is merely for the fair value of his services in negotiating for and effecting settlement of the claim for deficiency tax. This he cannot recover in a proceeding predicated upon the express agreement for compensation.

Judgment n. o. v. was properly entered for defendant.

The judgment is affirmed.