## Esakovich et al., Exrs., *v.* Groudine, Appellant.

366

Argued May 2, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*James M. Graham,* for appellant.

*Herbert R. Hahn,* for appellees.

OPINION BY KELLER, P. J., July 19, 1940:

This is a proceeding under the Act of June 16, 1836, P. L. 784, section 28, brought in the Court of Common Pleas of Allegheny County by the executors of the will of Dora Esakovich for a rule upon Louis J. Groudine, an attorney of that court, for the payment of money claimed to be due her by him as her attorney and wrongfully withheld by him.

The facts giving rise to the controversy are not disputed and may be stated as follows:

Harry M. Barnet, a resident of Philadelphia, died testate, leaving a widow and no issue. She elected to take against the will, thereby getting one-half of the estate. She also filed a claim against the estate for salary alleged to be due her by her husband, amounting to $32,000. If allowed, this would consume the balance of the estate.

Dora Esakovich, a resident of Ohio, was a sister and legatee under Barnet's will, and was notified that the widow's claim would be presented in the Orphans' Court of Philadelphia County on November 5, 1934.

On October 22, 1934 she and Joe Barnet, a nephew

and legatee, went to Mr. Groudine's office in Pittsburgh and engaged him to represent them. On that day, Mrs. Esakovich[1] signed and delivered a power of attorney, under seal, constituting him and one Morris B. Greenberg her attorneys, in law and in fact, to represent her as legatee or devisee under said will, and particularly to oppose the claim of Barnet's widow against his estate, with other powers not necessary to be recited. The power of attorney provided:

"The said Louis J. Groudine and Morris B. Greenberg, my said attorneys, shall receive as compensation for themselves, including any services rendered by any attorney employed by them under this power of attorney, the amount of thirty (30%) per cent from any and all moneys, stocks, or bonds, or other distributive share which might be decreed to me as legatee or devisee under the said will of the said Harry M. Barnet in the said estate."

On the same day letters were sent out by Mr. Groudine, under the signature of Mrs. Esakovich, to other legatees asking them to sign similar powers of attorney.

The next day he called Mrs. Esakovich by telephone at Steubenville and requested her to come to his office. She went there on October 24 with her son Arch and Joe Barnet, and she and Joe signed and delivered to him powers of attorney to be filed in the Orphans' Court in Philadelphia, and assignments of their interest in whatever moneys and securities might be awarded to them respectively as their shares in Harry M. Barnet's estate.

On the same day Mr. Groudine also dictated the following letter addressed to himself, which they signed:

---

[1] Joe Barnet also signed and delivered a like power of attorney.

"October 24, 1934.

"Louis J. Groudine, Esq.,
1209 Plaza Building,
Pittsburgh, Pa.

Dear Sir:

We are endeavoring to secure the cooperation and the sharing of counsel fees of our relatives who are legatees under the Will of Harry M. Barnet, deceased, in the Orphans' Court of Philadelphia County, Pennsylvania, in resisting the claim of Lillie H. Barnet, the widow, for $32,000.

In consideration of your undertaking to represent us in this matter, we, severally and jointly, agree to pay you and guarantee you thirty per cent of the total distributive shares which may be decreed to the following legatees:[2]

Mrs. Rosa Mervis, ...... Youngstown, O.

Mr. Jacob Barnet, ...... St. Paul, Minn.

Mrs. M. Greenstein, formerly Yudis Esakovich, Cedar Rapids, Ia.

Nathan Barnet, ...... San Diego, Cal.

Arch Barnet, ...... San Diego, Cal.

Dora Esakovich, ...... Steubenville, O.

Joe Barnet, Los Angeles, Cal.

Should one or more of the said legatees refuse to cooperate with us as aforesaid, we hereby authorize you to retain the whole of our distributive share, in accordance with assignment given you this day, or deduct any part thereof to make up the difference between

---

[2] Their respective interests apparently were: Joe Barnet (a nephew), legacy, $1000; Mrs. Esakovich (sister); Mrs. Mervis (sister); Mrs. Greenstein (a niece, daughter of Mrs. Esakovich); and Jacob Barnet (a brother), each one-tenth of the estate; Arch Barnet and Nathan Barnet (nephews), each one-twentieth; and of the residue consisting of notes of Jacob Barnet and Arch Barnet, Mrs. Esakovich, Mrs. Mervis and Jacob Barnet each one-fourth, Nathan Barnet, Arch Barnet and Joe Barnet, each one-twelfth.

what you will receive and an amount represented by 30% of the total distributive share which may be decreed to the aforesaid legatees.

Very truly yours,
Joe Barnet,
Dora Esakovich."

"Witness as to both signatures
Archy Esakovich."

An identical letter, except that the name of Arch Barnet was inadvertently omitted from the list of legatees, was also signed by Rosa Mervis.

Jacob Barnet, Nathan Barnet and Arch Barnet did not employ Mr. Groudine.

Mr. Groudine went to Philadelphia and employed additional counsel. The widow's claim for salary was contested and disallowed. See *Barnet's Est.*, 22 D. & C. 634 (1935), affirmed 320 Pa. 408, 182 A. 699 (1936). At the hearing it was first discovered that Jacob Barnet and Arch Barnet were indebted to the decedent in the amounts of $1240.33 and $3385.54, respectively, the latter being considerably more than Arch's legacy,— the excess not being recoverable. These amounts totaling $4625.87 were treated as assets of the estate in the distribution, and increased proportionately the shares of the other legatees.

In July 1937 Mr. Groudine received from the executor of Harry M. Barnet $3300.23 in cash, representing the money payable to Mrs. Esakovich as her share of said estate after adding the indebtedness due by Jacob and Arch. She was also awarded a one-fourth interest in the uncollected notes of Arch Barnet, making her total award in the estate, including such uncollected notes, $3516.32.

The like sum of $3516.32, calculated in the same manner, was awarded Jacob Barnet, but after deducting his note, he received only $2059.92 in cash.

The share of Arch Barnet, so calculated, was $1685.55, but his indebtedness to the decedent exceeded that amount and he received nothing.

The share of Nathan Barnet, so calculated, was $1685.53. He was paid in cash $1613.43.

Mr. Groudine deducted from the cash received by him for Mrs. Esakovich, to wit, $3300.23, thirty per cent on the face of her award (including her interest in Arch Barnet's note), $3516.32, $1054.90. He also deducted her proportionate share, along with Joe Barnet and Rosa Mervis, of thirty per cent of the *face* of the awards to Jacob, Arch and Nathan, $1042.49, making a total of $2097.39, and sent her on August 11, 1937 a check for $947.26 and on August 19, 1937 a check for $255.58, or a total of $1202.84, which the executors of Mrs. Esakovich—who had died in the meantime—refused to accept and brought this proceeding.

The court allowed Mr. Groudine thirty per cent on the cash collected for Mrs. Esakovich $3300.23 or $990.07; and also allowed him $488.58 for Mrs. Esakovich's proportionate share of thirty per cent of the cash distributed to Jacob and Nathan, or a total of $1478.65, leaving $1821.58 [3] due by Mr. Groudine to the petitioners. Mr. Groudine appealed. The petitioners (appellees) did not appeal.

The question presented to the court below was whether Mr. Groudine was entitled to receive only 30% of the actual distributive share obtained for Dora Esakovich, or was also entitled to retain her share (along with Rosa Mervis and Joe Barnet) of 30%, calculated on the distributive shares of Jacob Barnet, Nathan Barnet and Arch Barnet, who were affected by the litigation but did not employ Mr. Groudine to represent them. The court ruled that the effect of the letter of October 24, above quoted, was to entitle Mr. Groudine to withhold from Mrs. Esakovich her proportionate share of

---

[3] Incorrectly calculated by the court at $1811.43.

the 30% collectible from the awards to Jacob, Nathan and Arch; but that this percentage should be computed only on the actual amount in cash each of them received in distribution.

We think there is much to be said in support of the last mentioned proposition. The admitted facts show that the fee was a contingent one (*Underwood v. Rich,* 173 S. E. 224, 226, 227 (Ga.) ; *Woolridge v. Bradbury,* 215 S. W. 406 (Ky.) ; *Williams v. Bevis,* 278 P. 193 (Wash.) ; 7 C. J. S. sec. 187(a), p. 1067) and that the parties had no knowledge of any indebtedness owing to the decedent by his brother and nephew. They contemplated, as respects legatees who did not employ Groudine, the actual payment to the respective legatees, in cash, or equivalent collectible securities, of whatever might be awarded them, not a share unduly increased by uncollectible notes due by a legatee. This is seen by a reference in the letter of Mr. Groudine to Arch Barnet (21a) in which he, Groudine, sought to obtain like authority to act for Arch: "In event I am successful in the matter, it is understood I will deduct for my services thirty per cent of any distributive share that may be decreed to you and remit the remaining seventy per cent to you. If I am not successful in the matter, you will not owe me anything or be obligated to me in any way."

Furthermore, it must be remembered, that to the extent that the notes of Jacob Barnet and Arch Barnet were *paid* out of the shares awarded them and these amounts were distributed in cash to the other parties in interest, exclusive of the widow, Mr. Groudine would receive his 30% that is, he got his 30% on the one-half of these amounts which did not go to the widow, and it would seem unfair to those who employed him to charge them again with 30% on these same amounts set off against their awards and not paid in cash.

We think the principle enunciated by the Supreme

Court in *Diggs v. Taylor,* 329 Pa. 385, 198 A. 51, is applicable. There Diggs, a tax accountant, who made an agreement with Taylor & Company by which he should receive as a fee twenty-five per cent of all "refunds" of Taylor's income taxes for prior years, which were procured through his services, was allowed to recover twenty-five per cent of payments actually refunded Taylor, but was not allowed that percentage on claims for refunds *relinquished or discharged* by settlement of other tax demands of the government. The opinion of Mr. Justice MAXEY is very pertinent.

But, in any event, we are of opinion that the letter of October 24, relied on by the appellant was wholly without consideration and gave him no additional rights against Mrs. Esakovich over and above those agreed upon when he accepted employment from her and obtained from her the power of attorney dated October 22, 1934.

He thereby agreed to represent her and her interests as legatee in the Estate of Harry M. Barnet, and particularly to oppose the claim of the widow, Lillie H. Barnet, and for this he was to receive as compensation —including that paid any attorney employed by him— "the amount of thirty per cent from any and all moneys, stocks or bonds or other distributive share which might be decreed to [her] as legatee or devisee under said will of the said Harry M. Barnet in the said estate."

It was undoubtedly contemplated that Mrs. Esakovich should endeavor to get the other legatees, in like situation with her, to employ Mr. Groudine on the same terms; and she signed the letters which he dictated and sent out with that end in view.

Under the original agreement of employment the attorney was obligated to use his utmost endeavors on Mrs. Esakovich's behalf in opposing the widow's claim. He did nothing more than what he was so obligated to do; and so far as she was concerned, he was obli-

gated to do it for 30% of her share. She was not in like position with Mrs. Mervis, who signed a similar letter dated October 24 [Exhibit E, pp. 18a-19a]. Mrs. Mervis had not previously employed Mr. Groudine and he was under no obligation to represent her except as provided in that letter. The preamble in the letter of October 24, signed by Mrs. Esakovich set forth nothing by way of consideration moving to her, but only to the attorney. Whatever cooperation she might secure from the other relatives in the "sharing" of counsel fees in resisting the widow's claim, would not reduce the amount payable by her, but would increase the amount payable to him—and the consideration mentioned therein: "In consideration of your undertaking to represent us in this matter"—had already been secured to her, just as fully and effectually, two days prior when she engaged him to do that very thing and gave him her power of attorney.

There was no proof or admission in the case that the contract of October 22d was rescinded before the letter of the 24th was signed. The only reason given in the agreed facts for the execution of the letter is that it was done, "Because the other parties in interest had not yet retained Groudine as counsel to represent them in this matter." Whether the letter of the 24th was intended to be a new contract or a modification of the old does not appear. Whichever it was, however, there can be no doubt that it was not valid unless supported by consideration on the part of appellant: *Hecht v. Hecht,* 301 Pa. 379, 152 A. 537; *Shoemaker to use v. Farrell,* 64 Pa. Superior Ct. 34, 37; *DeBlois v. Boylston & Tremont Corp.,* 183 N. E. 823, 827, 281 Mass. 498. The presence of a seal in the original contract of the 22d does not remove this necessity. If the letter of the 24th was a new contract, this is clearly the case; and if it was a modification of the sealed instrument, the whole contract became then a simple in-

strument (*Malone & Son v. Railroad,* 157 Pa. 430, 440, 27 A. 756; *Spangler v. Springer,* 22 Pa. 454, 459, *Vicary v. Moore,* 2 Watts 451, 456-458) and consideration for the change had to be shown.

'Consideration' was defined in *Presbyterian Board of Foreign Missions v. Smith,* 209 Pa. 361, 363, 58 A. 689, as follows: "A test of good consideration is whether the promisee at the instance of the promisor, has done, forborne or undertaken to do anything real, or whether he has suffered any detriment or whether in return for the promise he has done something that he was not bound to do or has promised to do some act or has abstained from doing something." This has been more succinctly stated in *Hillcrest Foundation, Inc. v. McFeaters,* 332 Pa. 497, 503, 2 A. 2d 775, as follows: "Consideration is defined as à benefit to the party promising, or a loss or detriment to the party to whom the promise is made." It is undoubted that the benefit or detriment may be very slight.

Since the appellant was clearly obligated by the then subsisting contract of October 22d to do precisely what he was asked to do in the letter of the 24th, there was no detriment to him or benefit to Dora Esakovich, and the increase in compensation to him for those services was without consideration and void: *Warren Tank Car Co. v. Dodson,* 330 Pa. 281, 285, 199 A. 139; *Erny v. Sauer,* 234 Pa. 330, 334, 83 A. 205; *Fink v. Smith,* 170 Pa. 124, 128, 32 A. 566; *Cleaver v. Lenhart,* 182 Pa. 285, 292, 37 A. 811; *Lewis v. Hamilton's Exrs.,* 301 Pa. 173, 176, 151 A. 812; *Campbell v. Jefferson,* 296 Pa. 368, 373, 145 A. 912; Restatement, Contracts, sec. 76(a); Williston, Contracts (Revised Edition, 1936) sec. 130. See also the opinion of Judge STADTFELD in *Quarture v. County of Allegheny and Sniderman,* 141 Pa. Superior Ct. 356, 14 A. 2d 575.

The fact that the original agreement of October 22d named another attorney along with appellant did **not**

make his duty greater under the letter of the 24th; nor did the fact that Joe Barnet, as well as Dora Esakovich, signed the letter; since appellant was under a similar obligation to Joe Barnet by virtue of a former contract retaining him (see 3a, par. 8).

Consideration for the letter of the 24th cannot be found in any donee beneficiary theory, because the letter did not create any duty on the part of appellant running to the other legatees named in the letter. The recital is, "In consideration of your undertaking to represent us in this matter, we ...... agree to pay ......". The word 'us' clearly refers only to the two signers, to both of whom appellant already owed the duty of contesting the claim.

This was a true 'appeal', not an appeal in the nature of a writ of error (*Aurentz v. Porter*, 48 Pa. 335, 336, *Gilmore v. Connellsville Water Co.* — *Campbell's Appeal*, 2 Pa. Superior Ct. 99—see Act of May 9, 1889, P. L. 158). We have, therefore, the power to consider the whole matter and dispose of the case as justice requires. *Rand v. King*, 134 Pa. 641, 645, 19 A. 806; 2 R C. L. Appeal and Error, §238, pp. 283, 284; 3 Am. Jur., Appeal and Error, §814, pp. 355, 356, and §1207, p. 709. But, in view of the stipulation (par. 18) contained in the statement of the case filed under Rule 56, we shall not increase the amount to be paid by the appellant.

The appeal is dismissed at the costs of the appellant.