Almi, Inc., a Pennsylvania Corporation *v.* Dick Corporation, a Pennsylvania Corporation. Plotkin Brothers, Inc., Appellant.

Almi, Inc. *v.* Dick Corporation. The United States, Appellant.

Argued May 2, 1977, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*Harry R. Levy,* for Plotkin Brothers, Inc.

*Jack W. Plowman,* with him *Plowman and Spiegel,* for Dick Corporation.

*Arthur L. Bailey,* with him *Gary R. Allen; Gilbert E. Andrews; Myron C. Baum,* Acting Assistant Attorney General; and, of counsel, *Richard L. Thornburgh,* United States Attorney; and *Thomas A. Daley,* Assistant United States Attorney, for The United States.

*Lester G. Nauhaus,* with him *Ralph J. Cappy,* for Palkovitz and Palkovitz.

*Lawrence J. A. Purpura,* Assistant Attorney General, with him *Herbert W. Hoffman,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for Commonwealth.

OPINION BY JUDGE ROGERS, July 5, 1977:

This case requires consideration of the right of a surety[1] on promissory notes to set off the obligation as surety against the principal's funds, (1) where after becoming surety but before paying the notes the surety has been served with a writ of execution naming it garnishee of any funds of the principal coming into its possession, and (2) where after the date it became surety it was served with levies on the principal's property for federal taxes, the notice of liens for which had been filed after it became surety, and (3) where both before and after the date it became surety the Commonwealth of Pennsylvania had entered liens against the principal for unpaid unemployment compensation, and (4) where coincident with the surety's coming into possession of the principal's funds the principal's lawyer asserts a charging lien for having produced the funds. In addition to describing the right of the surety to set off, we must also determine the priorities of the United States,

---

[1] We have given the leading party to this suit the name surety because that name among conventional terms best fits that party's relationship to the company whose financial distress was the cause of litigation. A surety to generations of American lawyers meant a person who promised to pay a debt of another if the debtor didn't; a guarantor promised to pay if the debtor couldn't. The distinction has been much deplored, but the understanding persists that a surety's obligation is more nearly that of the principal than that of the guarantor. Article 3 of the Uniform Commercial Code which concerns commercial paper laudably provides consequences which flow from the contract made, rather than from the name given to the person who has provided his credit to another. Article 3 does refer to indorsers, accommodation parties and to the Contract of Guarantor; it does not use the word surety. Those Sections of Article 3 which establish the liability of the party to this suit whom we refer to as a surety are set out in footnote 2, *infra*; and a comprehensive, thorough, but somewhat discouraged critique of Article 3 is that of Professor Ellen A. Peters, "Suretyship under Article 3 of The Uniform Commercial Code" 77 Yale L.J. 833 (1968).

the Commonwealth, and the principal's lawyer in funds insufficient to satisfy all of them. The problem is one which a teacher with a sadistic bent would be pleased to use to test a class he particularly disliked.

Dick Corporation (Dick) had a contract to construct a building for the University of Pittsburgh. In March 1968, Dick entered into a contract with Almi, Inc. (Almi) for the latter to perform certain plumbing work required of Dick under its building contract. Almi executed two promissory notes to the Lincoln Bank and Trust Company (Bank), the first on June 20, 1968 and the second on June 29, 1968. The notes aggregated in principal amount the sum of $11,000. The due date of each note was the day following its date of execution. Because the Bank was unwilling to rely upon Almi's ability to pay its debts, Dick was asked to and did endorse each note. The form of the endorsement was pertinently:

> [T]he undersigned hereby jointly and severally *guarantees* to the holder hereof ————, successors, endorsers, transferees, or assigns, the punctual *payment* at the maturity of the said loan and hereby assents to all the terms and conditions of the said note. . . .
>
> For value received the undersigned endorser(s), or either of us, do hereby empower any Prothonotary or any attorney of any court of record within the United States, or elsewhere, to appear and after one or more declarations filed, *confess judgment in favor of the holder and against the undersigned,* or either of us, *if not paid at maturity. . . .*
>
> *The undersigned endorser(s) waives,* or severally waive, *presentment for payment, de-*

*mand, protest, notice of protest and dishonor and non-payment of this note.* (Emphasis added.)[2]

Almi was in financial trouble when it executed the notes and failed to pay them. On February 6, 1969, the Bank confessed judgment against Almi on the two notes. On September 22, 1970 it confessed judgment against Dick.

Tax liens had been filed of record against Almi by the Commonwealth of Pennsylvania and the United States. The liens of the Commonwealth and the dates

---

[2] Section 3-415(1) of The Uniform Commercial Code—Commercial Paper (UCC), Act of April 6, 1953, P.L. 3, *as amended*, 12A P.S. §3-415(1), provides:

> An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

The Official Comment under Section 3-415(1) says:

> Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. *His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal, while an accommodation endorser may be liable only after presentment, notice of dishonor and protest. . . .* (Emphasis supplied.)

The language of Dick's endorsement quoted in the body of this opinion demonstrates that Dick signed in the capacity of an accommodation party directly and immediately liable to the Bank upon Almi's default. In addition, as the Official Comment says, an accommodation party is always a surety. Further, the use of the phrase "guarantees payment" in the endorsement made Dick directly liable to the Bank upon Almi's default by Section 3-416(1) of the U.C.C., 12A P.S. §3-416(1) which provides:

> (1) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

on which they were filed with the Prothonotary of the Court of Common Pleas of Allegheny County were as follows:

| Amount | Date Filed |
|---|---|
| $ 75.58 | May 29, 1967 |
| 1,090.94 | December 8, 1967 |
| 960.39 | May 20, 1968 |
| 1,139.03 | September 16, 1968 |
| 1,235.11 | November 25, 1968 |
| 139.00 | March 21, 1969 |
| $4,640.05 | |

The assessment dates of the tax liens of the United States and the dates on which notices of the liens were filed in the Prothonotary's office were:

| Tax | Assessment Date | Date Notice of Lien Filed |
|---|---|---|
| $ 5,162.29 | 6/14/68 | 9/24/68 |
| 9,804.34 | 9/20/68 | 10/29/68 |
| 13,155.23 | 11/29/68 | 2/5/69 |
| 2,452.20 | 3/14/69 | 3/21/69 |
| 307.48 | 3/14/69 | 7/28/69 |
| 1,957.44 | 10/24/69 | 7/28/69 |
| $32,838.98 | | |

Plotkin Brothers, Inc. (Plotkin), which had supplied Almi with materials, obtained a judgment against Almi by default in the amount of $10,367.06 and caused a writ of execution to be served on Dick as garnishee on October 3, 1968.

Almi started an assumpsit action against Dick in the Common Pleas Court of Allegheny County on De-

cember 12, 1968, seeking a money judgment for work performed on its contract. Dick filed a counterclaim. The litigation was settled on September 23, 1970 during the trial. The terms of settlement were that Dick's counterclaim should be abandoned and that Dick would pay Almi the sum of $30,000 to be distributed as follows: (1) $12,000 to Palkovitz & Palkovitz (Palkovitz), Almi's lawyers; (2) $15,000 to Lincoln Bank and Trust Company in discharge of Almi's obligations on the two notes which Dick had endorsed; and (3) $3,000 to be interpleaded among creditors of Almi and deposited with the prothonotary until appropriate distribution could be determined.

Dick did not make distribution in accordance with the agreement, probably because of Plotkin's execution on the $10,367.06 judgment in which Dick had been served as garnishee, two notices of levy served on Dick by the United States seeking delinquent federal taxes owed by Almi exceeding $34,000 and the Bank's confessed judgment against Dick on Almi's notes. Instead, Dick, claiming a right of setoff on account of its position as surety on Almi's notes, filed a petition for interpleader of $15,000 naming as creditors who might be entitled to the funds: (1) Palkovitz for legal fees claimed in the amount of $12,000; (2) Plotkin as Almi's judgment creditor in the amount of $10,-367.06; (3) the Commonwealth of Pennsylvania for liened unemployment taxes in the amount of $4,640.05; and (4) the United States for delinquent taxes said to be in excess of $38,000.

The court below, at the instance of parties interpleaded, ordered Dick to interplead the entire $30,000 settlement amount because the court believed that Dick's right to set off its obligation as surety on the bank notes had not matured prior to the assessment and filing of notice of tax claims of the United States sufficient in amount to exhaust the entire $30,000 due

Almi in the settlement. Dick's appeal from this order to the Superior Court was quashed as interlocutory[3] and Dick paid the $30,000 into court. The court below, after further hearings and consideration, and contrary to its earlier order, allowed Dick's setoff and determined that the amount to be interpleaded for division among Almi's creditors was the remaining $15,000. The hearing judge ordered the money divided $6,000 to Palkovitz, $3,764 to the Commonwealth and $5,236 to the United States. The court below en banc agreed that Dick's setoff was proper, that $15,000 was the correct amount to be interpleaded but ordered distribution of $12,000 to Palkovitz, $1,254.67 to the Commonwealth and $1,745.33 to the United States.

United States and Plotkin Brothers, Inc. appealed the order of the court en banc to the Superior Court which transferred their appeals to this Court. The appeals raise two principal issues: (1) the right of Dick in the face of the garnishment to set off Almi's funds against its obligation to the Bank as surety on Almi's notes; and (2) the amount, if any, of the legal fee appropriately payable to Palkovitz from the sum interpleaded.

The general rule governing a garnishee's right to setoff is found in the old, but nevertheless still applicable case of *Roig v. Tim*, 103 Pa. 115 (1883). The opinion of the Supreme Court in that case in its near entirety is:

> The service of an attachment execution has the effect of an equitable assignment of the thing attached. It puts the garnishee [Dick] in the relation to the attaching creditor [Plotkin and United States] which he had sustained to his former creditor [Almi]. He [Dick] may

---

[3] *Almi, Inc. v. Dick Corporation*, 224 Pa. Superior Ct. 291, 307 A.2d 444 (1973).

make the same defense to the attachment by evidence of set-off or of other equities that he [Dick] might have made if sued by his original creditor [Almi]. If he [Dick] has no defense against the latter [Almi], he [Dick] cannot set up one against the attaching creditor. *A valid set off must be of a debt or demand due at the time of the commencement of the [garnishment] action in which it is interposed. If the claim is not then ripe for action it cannot be set off. . . .* (Emphasis added.) *Accord, Frazier v. Berg,* 306 Pa. 317, 159 A. 541 (1932); *Pennel v. Grub,* 13 Pa. 552 (1850); *see also* 7 Standard Pennsylvania Practice §567.

Plotkin and the United States say that Dick's claim for reimbursement from and setoff against Almi was not ripe for action until Dick paid $15,000 to the bank to discharge its liability as surety on the notes, an event which occurred after October 3, 1968 when Plotkin served its writ of execution on Dick as garnishee, and after notices of the federal liens were filed between September 1968 and July 1969. Dick answers that it had a claim against Almi as of June 22, 1968 and June 30, 1968, the days after the due dates of Almi's two notes, at which times Dick became itself directly liable on the notes by its endorsement and that it had on those dates a fully ripened right to exoneration by Almi which it could assert by setoff.

As we have demonstrated, Dick became directly liable to the bank upon Almi's failure to pay the notes when due. When a surety's obligation to pay the principal debt becomes absolute, the surety is entitled in equity to require the principal debtor to make exoneration and the surety may enforce the right by immediate resort to equity to compel the principal to discharge the debt. *Craighead v. Swartz,* 219 Pa. 149, 67 A. 1003 (1907); *McAbee v. Cribbs,* 194 Pa. 94, 44

A. 1066 (1899); *Ardesco Oil Co. v. North American Oil & Mining Co.*, 66 Pa. 375 (1890); *Beaver v. Beaver*, 23 Pa. 167 (1854); *Condran v. Kennedy*, 56 Pa. Superior Ct. 356 (1914). *See also* 35 P.L.E. §131.

Plotkin and the United States are correct in asserting that Dick's right to reimbursement from Almi did not mature until Dick actually paid the notes. Section 3-415(5) of the UCC, 12A P.S. §3-415(5). They are wrong, however, when they equate the surety's right to a setoff to its right to reimbursement. It is true that a surety which has paid the principal's obligation may obtain reimbursement by means of setoff of the principal's funds in the surety's hands; but the surety's right of setoff is not dependent on payment of the principal's debt and arises when the principal's obligation becomes due and is unpaid.

It is further clear that the principal is bound not simply to indemnify the surety but to keep it unmolested, and this before the surety has paid the principal's debt. *Ross v. Waite & Parks*, 85 Pa. Superior Ct. 103 (1925). Further, the pleadings and proofs at the one short hearing conducted show that Almi was at all pertinent times in a condition of great financial distress. The Supreme Court of Pennsylvania has said:

> 'A principal who is insolvent cannot collect a debt which the surety owes him without his indemnifying the surety' .... 'The surety of an insolvent debtor cannot be compelled to pay a debt he owes his principal until he is released of his responsibility of suretyship, and may retain what he owes as a counterclaim against such surety. ...' (Citations omitted.)

*Craighead v. Swartz, supra,* 219 Pa. at 152-53, 67 A. at 1004.

However, regardless of the principal's financial condition, the surety may retain monies of the principal

sufficient for the surety's indemnification. This power to retain or set off monies owing to the principal may be asserted by the surety before it pays the principal's obligation because the equity of setoff arises when the surety's right to seek exoneration accrues, that is, when the principal debt becomes due and is unpaid.

With respect to the garnishment execution against Dick, Plotkin stands in Almi's shoes. As garnishee, Dick may interpose any defense, including setoff, which it could assert against Almi. *Roig v. Tim, supra.* Since Dick's right to exoneration matured prior to Plotkin's attachment, so also did its right to set off any funds of Almi which might come into its possession.

The United States fares no better than Plotkin. The Internal Revenue Code provides that United States taxes, after demand and failure to pay, become liens against ''all property and rights to property, whether real or personal'' belonging to the taxpayer, 26 U.S.C.A. §6321; and that such liens arise when assessments are made, 26 U.S.C.A. §6322. The Code provides that the federal lien shall not be valid against other lien creditors until it has been filed at the place designated by state law. *26 U.S.C.A. §6323.* The Code also provides that if levy is made on property of the taxpayer in the hands of third persons, the latter shall, if they refuse to surrender the property, be liable for its value. 26 U.S.C.A. §6332(a) and (c). State law must be looked to in order to determine whether a taxpayer has property rights to which a federal tax lien may attach at all. *Aquilino v. U.S.,* 363 U.S. 509 (1960). One served with a notice of federal levy pursuant to Section 6332(c) has only two defenses for a failure to surrender the property levied on: (1) that he is not in possession of the property

or (2) that the taxpayer's property is subject to a prior attachment or execution. *United States v. Department of Highways*, 349 F. Supp. 1370 (E.D. Pa. 1972). Dick's defense is that the $15,000 which it was entitled to set off was not Almi's property at the time of levy. The Pennsylvania law which we have already expounded supports Dick's position. As Almi's surety on due and unpaid notes, it could and had asserted its right to setoff. This case is not materially different from *United States v. Department of Highways, supra,* where the United States District Court held that a highway construction contractor which was in default of the payment of labor and material claims had no property or right to property in contract proceeds in the possession of the Commonwealth because those monies were the property of the surety on the contractor's labor and materialmen's bond. *See also, Central Surety and Insurance Corp. v. Martin Infante Co., Inc.,* 272 F.2d 231 (3d Cir. 1959); *Atlantic Refining Co. v. Continental Casualty Co.,* 183 F. Supp. 478 (W.D. Pa. 1960). Since, as we have seen, Almi could not recover its property from Dick until it discharged Dick's liability as surety, the United States cannot reach the same property in Dick's hands by its Section 6332 levy. *United States v. Winnett,* 165 F.2d 149 (9th Cir. 1947).

We next turn to the claim of Palkovitz for legal services performed for Almi in the lawsuit which produced the fund. Palkovitz represented Almi under a contingent fee agreement providing for attorneys fees of "forty percent (40%) of any and all monies that are received or recovered." Both the trial judge and the court below en banc ruled that the fund properly interpleaded was $15,000 rather than $30,000. The trial judge, however, allowed Palkovitz only 40% of $15,000, the amount ultimately subject to interpleader,

or $6,000. The court en banc revised this distribution and allowed Palkovitz 40% of the $30,000 settlement amount, or $12,000.

The United States concedes the right of Palkovitz to a charging lien on the fund but disputes the amount, arguing that the $6,000 was the correct amount. Plotkin denies the right of the charging lien in any amount, basing its case in this regard on *Syme v. Bankers National Life Insurance Co.*, 400 Pa. 74, 161 A.2d 29 (1960), where it was held that an attorney had no valid charging lien on the proceeds of a judgment recovered in a common law action. When, however, a fund is deposited in court for judicial distribution, the court makes the distribution based on equitable principles and may recognize the attorney's charging lien. *Appeal of Atkinson*, 8 Sadler 292 (Pa.), 11 A. 239 (1887); *McKelvey's and Sterrett's Appeal*, 108 Pa. 615 (1885); *Turtle Creek Bank and Trust Co. v. Murdock*, 150 Pa. Superior Ct. 277, 28 A.2d 320 (1942). In *Recht v. Clairton Urban Redevelopment Authority*, 402 Pa. 599, 608, 168 A.2d 134, 138-39 (1961), the Pennsylvania Supreme Court, after an extensive review of case law, determined the requisites of an attorney's charging lien to be:

> (1) [T]hat there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

Here, there is a fund in court created by the efforts of Palkovitz on behalf of Almi. There is also a contingent fee agreement under which counsel might look to the fund for compensation. Almi's financial condition is such that Palkovitz's charging lien should be recognized. In *United States v. Department of Highways, supra,* where the *Recht* prerequisites were not so clearly present, the United States District Court, relying on *Recht,* nevertheless recognized an attorney's charging lien and its priority over duly filed prior federal tax liens.[4] It is just as clear that under Pennsylvania law Palkovitz is entitled to priority over the liens of the Commonwealth and Plotkin. *Harris's Appeal,* 323 Pa. 124, 186 A. 92 (1936); *Turtle Creek Bank and Trust Co., supra; Mann v. Wakefield,* 11 Pa. Superior Ct. 18, 36 A. 244 (1889).

We believe that the court below en banc, although correctly recognizing the attorney's charging lien, erred in reversing the trial judge's award and in awarding counsel on account of the lien 40% of $30,000. The attorney's charging lien attaches only to a fund in court or otherwise available for distribution. Since Dick was entitled to set off $15,-000, the fund in court is only $15,000, 40% of which is $6,000. Additionally, in exercising control over legal fees, courts normally compute the amount of contingent fees with reference to the amount the client has received and not by reference to the total award. *Diggs v. Taylor & Co.,* 329 Pa. 385, 198 A. 51 (1938); *Topton National Bank v. Holland,* 190 Pa. Superior Ct. 501, 503, 154 A.2d 253 (1959); and *Gleckel Estate,* 155 Pa. Superior Ct. 383, 38 A.2d 374

---

[4] Section 6323(b)(7) of the Internal Revenue Code, 26 U.S.C.A. §6323(b)(7), recognizes attorneys' charging liens where permitted by local law.

(1944). On equitable as well as legal considerations, we conclude that Palkovitz's fee to be recognized as a claim having priority on the interpleaded fund should be $6,000.

After Palkovitz's fee is deducted, $9,000 remains for distribution among the United States, the Commonwealth of Pennsylvania and Plotkin. While the liens of the United States for taxes, interest and penalties "arise at the time the assessment is made,"[5] they are not valid against "any purchaser, holder of a security interest, mechanic's lienor, or a judgment lien creditor" until notice of the tax lien has been properly recorded or filed.[6] Section 301.6323-1(a)(2)(i)(b) of the Federal Tax Regulations on Procedure and Administration defines a "judgment creditor" as:

> [A] person who has obtained a valid judgment in a court of record and of competent jurisdiction for the recovery of . . . a certain sum of money and . . . who has a perfected lien under such judgment on the property involved. . . .

By this definition, Plotkin is clearly a judgment creditor. Under Pennsylvania law, however, the rule is that the lien of a judgment creditor attaches to personal property of a debtor only after a writ of execution or similar writ is delivered to the sheriff for execution. Section 39 of the Act of 1836, P.L. 755, *as amended*, 12 P.S. §2291; *see also, Commonwealth v. Wilson Lumber Co.*, 27 D. & C. 2d 696 (1962); *Ersa, Inc. v. Dudley*, 234 F.2d 178 (3d Cir. 1956). Thus, Plotkin's judgment lien will have priority only over United States liens recorded[7] after October 3, 1968, the day that Plotkin's writ was served on Dick.

---

[5] 26 U.S.C.A. §6322.

[6] 26 U.S.C.A. §6323(a).

[7] Plotkin says that because its execution on Dick as garnishee preceded the service on Dick of the notice of federal tax levy, it,

The order of the priority of state and federal statutory liens is to be determined in accordance with the principle of law that the first choate lien in time is the first lien in right. *United States v. City of New Britain,* 347 U.S. 81 (1954). A federal tax lien, of course, attaches or becomes choate at the time of assessment, 26 U.S.C.A. §6332; *see also Ersa, Inc. v. Dudley, supra.* We must next determine when the Commonwealth's statutory lien was perfected "in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. City of New Britain, supra,* 347 U.S. at 84, *see also United States v. Vermont,* 377 U.S. 351 (1964).

The Commonwealth's lien is created by Section 308.1 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §788.1, which provides that:

> (a) *All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, including after-acquired property of the employer liable therefor and shall attach thereto from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. The lien imposed hereunder shall have priority from the date of such entry for record*

Plotkin's, claim is superior. Plotkin misconstrues the import of the notice of federal tax levy. The levy is only a means of enforcement of existing liens, it does not create a lien. The order of priority of the federal lien which exists from the date of assessment is determined by the date of its recording. 26 U.S.C.A. §6332(a) ; *Beeghly v. Wilson,* 152 F. Supp. 726 (N.D. Iowa 1957). *See also United States v. Sullivan,* 333 F.2d 100 (3d Cir. 1964).

and shall be fully paid and satisfied out of the proceeds of any judicial sale of property subject thereto, before any other obligation, judgment, claim, lien or estate to which said property may subsequently become subject, except costs of the sale and of the writ upon which the sale was made and real estate taxes and municipal claims against such property, but shall be subordinate to mortgages and other liens existing and duly recorded or entered of record prior to the recording of the tax lien. In the case of a judicial sale of property subject to a lien imposed hereunder, upon a lien or claim over which the lien imposed hereunder has priority, as aforesaid, such sale shall discharge the lien imposed hereunder to the extent only, that the proceeds are applied to its payment and such lien shall continue in full force and effect as to the balance remaining unpaid.

(b) The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record and indexed as judgments are now indexed, certified copies of all liens imposed hereunder, upon which record it shall be lawful for writs of execution to be directly issued without the issuance and prosecution to judgments of writs of scire facias : Provided, That not less than ten (10) days before the issuance of any execution on the lien, notice of the filing and the effect of the lien shall be sent by registered or certified mail to the employer at his last known post office address. No prothonotary shall require as a condition precedent to the entry of such liens the payment of the costs incident thereto.

. . . .

(d) Notwithstanding any other provisions of this section, the lien herein provided for shall have no effect upon any stock of goods, wares or merchandise regularly sold or leased in the ordinary course of business by the employer against whom said lien has been entered unless and until a writ of execution has been issued and levy made upon said stock of goods, wares and merchandise. (Emphasis added.)

The Commonwealth's liens for nonpayment of contributions to the Unemployment Compensation Fund attach and become choate at the time of their recording in prothonotaries' offices. All subsequently perfected liens are subordinate.

We are mindful of case law holding that a lien under Section 308.1 of the Unemployment Compensation Law does not attach until after a writ of fieri facias has been issued and delivered to the sheriff for execution, and that recording alone did not make the tax lien choate because there was something yet to be done. *Commonwealth v. Lombardo*, 356 Pa. 597, 52 A.2d 657 (1947); *Ersa, Inc. v. Dudley, supra.* Both *Lombardo* and *Ersa*, however, were pre-1963-64 cases and their holdings were based on an apparent conflict between the first and last sentence of Section 308.1(a)[8] as it

[8] *Ersa, Inc.* and *Lombardo* were concerned with the language of Section 308.1 as it was before the 1963-64 amendments and which is reproduced in *Lombardo*, 356 Pa. at 600, 52 A.2d at 658:

'All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is [sic] sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such

was then written. The first sentence said that the
lien attached on recording and the last implied that
it did not attach until issuance of a writ of fieri facias.
The 1963-64 Amendments to Section 308.1(a) removed
the conflict and the subsection has since clearly pro-
vided for the attachment of the lien on recording.
Hence, a Commonwealth lien entered prior to the date
of assessment of a United States tax lien is first in
time and first in right. *United States v. Vermont, su-
pra.*

Applying these principles, we conclude that Com-
monwealth liens entered May 29, 1967, December 8,
1967 and May 20, 1968, totalling $2126.91 plus statu-
tory interest and penalties, if any, have priority over
both Plotkin and the United States as being first in
time. The United States lien arising at assessment
on June 14, 1968 and filed on September 24, 1968, to-
talling $5,162.29 plus statutory interest and penal-
ties, if any, is next in priority because it attached or
became choate prior to the Commonwealth lien en-
tered September 16, 1968 and was filed before Plot-
kin's execution effected by service on Dick on Octo-
ber 3, 1968. The Commonwealth's lien entered Sep-
tember 16, 1968, totalling $1,139.03 plus statutory in-
terest and penalties, if any, is next in order of priori-

sale in the same manner and to the same extent that State
taxes are paid: Provided, however, That the lien hereby cre-
ated shall not be prior to pre-existing duly recorded real es-
tate mortgages. *The department may at any time transmit to
the prothonotaries of the respective counties of the Common-
wealth, to be by them entered of record, certified copies of
all liens for unpaid contributions, interest and penalties
which may now exist or hereafter arise, upon which record
it shall be lawful for writs of scire facias to issue and be
prosecuted to judgment and execution in the same manner
as such writs are ordinarily employed.'* (Emphasis in origi-
nal.)

46

ty. Any amounts thereafter remaining of the $9,000, if any, goes to Plotkin.

Accordingly, we enter the following

ORDER

AND Now, this 5th day of July, 1977, it is hereby ordered and decreed that the order of the court below granting Dick Corporation a $15,000 setoff against the $30,000 of Almi's funds be and it is hereby affirmed. The order of the court below granting a charging lien to Palkovitz and Palkovitz in the amount of $12,000 is modified so as to reduce the amount to $6,000 and as so modified is affirmed. Distribution of the remaining $9,000 to the Commonwealth of Pennsylvania, the United States and Plotkin shall be made in a manner not inconsistent with this opinion. Since the claims of the United States and the Commonwealth may require further computation of interest or penalties, we leave to the court below with the assistance of counsel the task of calculating the exact amounts payable.