**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**Timothy P. BATH and Margaret A. Bath, Defendants.**

**No. C88–0353J.**

United States District Court, D. Wyoming.

Dec. 6, 1989.

Patrick Henigan, Philadelphia, Pa., Holland & Hart, Cheyenne, Wyo., and Holland & Hart, Denver, Colo., for plaintiff.

Glenn E. Smith, Cheyenne, Wyo., and John R. Vincent, Riverton, Wyo., for defendants.

## MEMORANDUM OPINION AND ORDER RULING ON MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, District Judge.

The plaintiff, Insurance Company of North America, (INA), has brought this action seeking indemnity from and a declaratory judgment against the defendants, Timothy P. Bath and Margaret A. Bath. INA originally filed this action in the United States District Court for the Eastern District of Pennsylvania, but upon the motion of the defendants, the case was transferred to this court on October 12, 1988. In their answer the defendants have asserted numerous counterclaims on which INA has moved for summary judgment. INA also has moved for summary judgment on its indemnity claim against the Baths.

This controversy arises from a purchase by the Baths of a one-half unit interest in a limited partnership known as the San Antonio Associates Limited Partnership. The price of this one-half unit interest was $42,900, which the Baths financed in May or June 1985 by executing a promissory note to the limited partnership. The note, which the limited partnership assigned to Columbia Savings & Loan Association, was secured by a surety bond issued by INA. The Baths applied for this bond at the time they executed their promissory note to the limited partnership. In applying for this bond, the Baths executed an "investor bond application" and an "investor bond indemnification and pledge agreement," under which they agreed to indemnify INA for all losses it incurred as a result of a default by the Baths on their promissory note held by Columbia Savings & Loan Association.

Sometime thereafter, the Baths defaulted on their note on which INA, as surety, began making payments to Columbia Savings & Loan Association. INA now seeks indemnity under the investor bond indemnification and pledge agreement for all payments it has made on behalf of the Baths.

The Baths argue that INA is not entitled to indemnity because it made payments on their behalf after they informed INA that they were fraudulently induced into purchasing the limited partnership interest for which they executed the note and indemnification agreement. In their opposition to INA's motion for summary judgment, the Baths present to the court a grim and disturbing account of fraud whereby they were defrauded of their entire net worth by their "financial advisor," Philip R. Trujillo. This alleged fraud is the subject of a lawsuit filed by the Baths in this court wherein they seek redress for the losses they sustained as a result of the fraud allegedly perpetrated by Trujillo.

According to the Baths, Trujillo, whom Mr. Bath had known for many years, became their "investment advisor" sometime after the Baths acquired a $35,000–oil royalty from an oil and gas leasehold interest given to them by Mrs. Bath's mother. Upon receiving this royalty payment, which was the only "discretionary income" the Baths had ever possessed, they contacted Trujillo to request that he develop for them a long term investment plan. They assert that between 1984 and 1985, Trujillo and others placed them in numerous investments that went sour, which caused the Baths to lose a substantial amount of money including the loss of their entire $35,-000–royalty payment.[1]

After conducting a "financial analysis" of the plaintiffs' assets, Trujillo advised them to invest in the San Antonio Associates Limited Partnership, a Texas limited partnership that was seeking investors to help it acquire businesses in San Antonio, Texas. To finance the acquisitions, the limited partnership offered to sell to investors twenty-five units of limited partnership interests for $85,000 per unit. Trujillo recommended that the plaintiffs purchase a one-half unit interest for $42,900, which would serve as a tax shelter for any future income the plaintiffs might receive from oil royalties.

According to the Baths, Trujillo and another, a Raymond E. Blitstein, persuaded them during a meeting to make the investment. At this meeting, Trujillo and Blitstein convinced the Baths to sign the necessary documents in blank, which included the surety bond application and the investor bond indemnification and pledge agreement with INA. The Baths not only failed to read these two documents before signing them, but moreover they failed to read the investment prospectus or other materials in Trujillo's and Blitstein's possession, which would have revealed that the plaintiffs were unsuited for this investment. The Baths also signed in blank an investor qualification questionnaire, which Trujillo and Blitstein allegedly later falsified to reflect the Baths' supposed financial qualifications for this investment. As a tax shelter, the investment would benefit those persons possessing a net worth of $200,000 exclusive of home and furnishings and having incomes that fell within the forty-nine percent federal income tax bracket.[2]

The Baths financed this investment by executing a promissory note to the limited partnership. Evidently, Trujillo and Blitstein represented that the cost of the investment would be paid in quarterly principal payments of between $1,400 and $2,075,

---

1. In their second amended complaint filed in *Bath v. Blitstein*, No. C88–0066J (D.Wyo. Nov. 17, 1988) (plaintiffs' second amended complaint), the plaintiffs alleged that Trujillo made his first investment for them in the fall of 1983. That investment involved $17,000 of the plaintiffs' money, which was invested in "a speculative, high risk stock purchase plan with [a] Consolidated Investment Services, Inc....." The plaintiffs alleged that this investment soon caused them to lose $8,000. Trujillo, on the other hand, allegedly earned a substantial commission from this investment. Thus, evidently the Baths had had a financial relationship with Trujillo prior to 1984.

2. As a tax shelter, the investment in the limited partnership was also appropriate for persons who qualified as accredited investors as defined by Regulation D of the Securities Act of 1933.

which were to be made between May 1985 and February 1991. At least, however, because the investment was to be financed with interest by Columbia Savings & Loan Association over a period of almost six years, it was going to cost the Baths approximately $72,000.

Between May 1985 and August 1985 the Baths paid $4361.50 on their investment note to the limited partnership, which had been assigned to Columbia Savings & Loan Association. They defaulted on the note after discovering the true cost of the investment. INA, through its service representative, Waite Hill Services, Inc., notified the Baths that it made payment to Columbia Savings & Loan on the defaulted note. INA demanded that the Baths reimburse it pursuant to the investor pledge and indemnification agreement. The Baths, through their attorney, responded by letter informing Waite Hill Services of the reasons why they stopped making payments on the note. Letter from Glenn E. Smith to J. Thomas Coolidge (May 27, 1986) (discussing the status of the Baths' investment in the San Antonio Limited Partnership). Although INA was informed of the alleged fraud underlying the limited partnership investment, it continued to make payments to Columbia Savings & Loan. According to the Baths, between May, 27, 1986, to August 5, 1988, INA had paid $20,979.94 to Columbia under the investor bond.

This summary of the facts omits many other allegations asserted by the Baths pertaining to the acts of Trujillo and others. For example, the Baths allege that at some point Trujillo returned approximately $10,000 of their money, but urged them to use it to pay the balance on their home mortgage. Trujillo then convinced the Baths to borrow $87,000 by giving a new mortgage on their home. The money was supposed to be used as an investment in a condominium project, but Trujillo and another, a Crencencio Arias used the money for their personal purposes. Similar allegations of fraud have been omitted because they do not involve INA and have no bearing on the issue presented.

In addition to seeking indemnity, INA seeks a declaration that the Baths are obligated to indemnify INA for any payments it may make in the future on their defaulted note. Although the note contains an acceleration clause, Columbia Savings & Loan Association, for whatever reason has not accelerated the note, despite its defaulted status. It would appear therefore that a controversy exists between the parties concerning future payments because a judgment in INA's favor on the current amount due might prevent it under the merger doctrine of *res judicata* from suing the Baths for subsequent payments it may make on the defaulted note. *See generally Jones v. Morris Plan Bank of Portsmouth,* 168 Va. 284, 191 S.E. 608 (1937) (a second suit for future defaults on an installment note prevented by merger doctrine of *res judicata*).

The Baths argue that they are not liable to INA under the indemnity agreement because it lost that right to indemnity by paying a claim for which they were not liable. According to the Baths, its fraud defense, which was presumably available to INA, relieved them of any liability on the note. Under their theory, INA's failure to assert their fraud defense to Columbia's demand for payment rendered its payment voluntary, relieving the Baths of their duty to indemnify INA.

Under general equity principles a surety has a right to indemnification only when it pays "a debt for which the [its] principal is liable." *Commercial Ins. Co. of Newark v. Pacific–Peru Constr. Corp.,* 558 F.2d 948, 953 (9th Cir.1977). These principles, however, have no application when an express contract of indemnity exists between the surety and the principal. *Id.* Here, such a contract exists between the parties and therefore resort to these general equity principles is inappropriate. *Fidelity and Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.,* 722 F.2d 1160, 1163 (4th Cir.1983). Instead, the rights of the parties are to be determined in accordance with that contract, which requires that the Baths indemnify INA, after demand, for any sums it pays to Columbia as a result of the Baths' default on the note. It is undis-

puted that the Baths have defaulted on the note for which INA has made payment to Columbia and demand for reimbursement from the Baths.

The Baths, however, make two additional arguments urging this court to find that INA is somehow not entitled to indemnity. First, they argue that the indemnity provision should be narrowly construed against INA. Second, they contend that even assuming the provision requires indemnification, the court should refuse to enforce the provision because INA paid Columbia in bad faith or through fraud.

In deciding these issues the court first must determine what law governs the indemnity agreement. In a diversity action, the court applies the conflicts of laws doctrine of the state in which it sits. *Mullinax Engineering Co. v. Platte Valley Constr. Co.*, 412 F.2d 553, 555 (10th Cir. 1969). Under Wyoming's conflicts of laws doctrine governing contract issues, " 'where a contract is made in one state to be performed in another, the law of the state of performance will govern unless it shall appear that the parties intended otherwise.' " *Id.* (quoting *J.W. Denio Milling v. Malin*, 25 Wyo. 143, 155–56, 165 P. 1113, 1116 (1917)).

The indemnity agreement at issue contains a choice of law provision, which provides that the rights and liabilities of the parties shall be determined by the laws of Pennsylvania. The court therefore shall apply the law of that state to the extent possible in resolving these issues.

■ Under the law of the state of Pennsylvania, as in Wyoming, contracts of indemnity are generally favored. *See generally Almi, Inc. v. Dick Corp.*, 31 Pa. Commw. 26, 375 A.2d 1343 (1977). Under that state's law, the Baths, as principals, are "bound not simply to indemnify the surety but to keep it unmolested, and this before the surety has paid the principal's [Baths'] debt." *Almi, Inc.*, 31 Pa.Commw. 26, 375 A.2d at 1348. This rule applies here where Columbia made a demand upon INA under the bond to pay the default on the note. Thus under the law of Pennsylvania, INA had the right to seek indemnity

even before it paid the Baths' default. Applying this rule, the court has no difficulty finding that the Baths must indemnify INA in accordance with their agreement.

Assuming the law of Wyoming applied, the result would be substantially the same. In Wyoming, as elsewhere, indemnity agreements are generally favored and should be broadly construed to effectuate the intent of the parties. *Cities Service Company v. Northern Production Company*, 705 P.2d 321, 328 (Wyo.1985). This rule also applies in Colorado. *See, e.g., Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo.1988) (court construes indemnity agreement to effect, not defeat, the parties' intentions). The rule of strict construction advocated by the Baths applies only to indemnity agreements that purport to indemnify the indemnitee against its own negligence. *Cities Service*, 705 P.2d at 328; *see generally Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96, 99 (Wyo.1983) ("contracts exculpating one from the consequences of one's own acts are looked upon with disfavor by the courts.").

The provision at issue requires that the Baths reimburse INA for all losses occasioned by the Baths' default on the note, as opposed to losses caused by tortious conduct. It does not purport to require indemnity for either their negligence or the negligence of INA. The indemnity relates to a commercial paper transaction to which negligence principles have little application. Even assuming, however, a strict construction applied, the court has no difficulty finding that the agreement requires that the Baths indemnify INA against sums it may pay on the defaulted note.

Although indemnity agreements are broadly construed to effect the parties' intent, such a rule has an exception where the surety has performed on its bond either through fraud or in bad faith. *Fidelity & Deposit Co. of Md.*, 722 F.2d at 1163. The Baths assert that INA performed under its bond in bad faith or through fraud because it made payments to Columbia after it learned of the Baths' "rescission of the note" because of the alleged fraud that

induced them to sign it. According to the Baths, the surety had a duty to investigate their allegations and to assert them as defenses to Columbia's demand for payment under the bond. Notwithstanding whether INA had such a duty, the breach of which allegedly would relieve the Baths of their contractual obligations, the court finds that the argument overlooks the duty INA owed to Columbia under the bond. The bond contains a "waiver of defense clause" under which INA agreed not only to waive its defenses to the note at issue, but more important, it agreed to waive the Baths' defenses to the note as well. The provision provides in relevant part that INA "waives all defenses of any kind which [it], the principals ... might have with respect to [the] note, including without limitation (i) **fraud**...." (Emphasis added.) Thus, under its agreement with Columbia, INA could not assert any defenses to Columbia's demand for payment on the note.

The court could find only one case similar to this one. *See Jett v. Sunderman,* 840 F.2d 1487 (9th Cir.1988). In *Jett,* the plaintiff, as did the Baths, purchased an interest in a limited partnership, which he mainly financed by executing an interest bearing promissory note secured by a bond, which was issued by a surety. The limited partnership assigned the secured note to a bank as collateral for a loan. The offering memorandum stated that the surety agreed to issue a bond securing payment of the note.[3] After the limited partnership filed bankruptcy, the plaintiff refused to make payments on the note, causing the bank to demand that the surety cure the default under its bond. That bond, as does the one before the court, contained a similar waiver of defense clause. The surety made the payments and sought indemnification from the plaintiff under an indemnification and pledge agreement. *Id.* at 1490.

The plaintiff sued the surety under 10b–5, alleging that its failure to disclose the waiver of defense clause was a material omission that occurred in connection with the sale of a security. Although the district court granted summary judgment in favor of the surety on the 10b–5 claim, the Ninth Circuit reversed, finding that there were genuine issues of material fact concerning whether the failure to disclose occurred in connection with the sale of security. This issue, however, is not before the court because the Baths are not asserting a 10b–5 claim against INA. In light of the agreement between INA and Columbia, of which the Baths are apparently unaware,[4] the court fails to see how INA acted in bad faith or through fraud when it performed under the bond.

INA also has moved for summary judgment on the Baths' counterclaims. The Baths assert that under agency and respondeat superior principles INA is liable to them for the acts of Trujillo and Blitstein. They also assert counterclaims for civil conspiracy, breach of the covenant of good faith and fair dealing, and for indemnity.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The purpose of summary judgment is to "unmask frivolous claims and to put a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438, 445 (2d Cir.1980). In deciding a motion for summary judgment the court must consider only material facts, which are generally identified by the substantive law governing a given cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus factual disputes that are irrelevant or unnecessary cannot defeat an otherwise properly supported motion for summary

---

**3.** The court is unaware whether the offering memorandum for the San Antonio Associates Limited Partnership contains a similar statement concerning INA's agreement to issue a bond to secure payment of the investor notes.

**4.** In their supplemental memorandum, the Baths assert that they have not seen the bond agreement INA and Columbia Savings & Loan Association, even though the agreement is attached as an exhibit to INA's complaint.

judgment because "only disputes over facts that might affect the outcome of a suit under governing law will preclude summary judgment." *Id.* at 247–48, 106 S.Ct. at 2509–10.

Of course the party moving for summary judgment has the initial burden of informing the court of the basis for its motion, "which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party need not disprove the nonmoving party's claims, but must only show that the facts are without legal significance. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Insurance Corporation,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). Once the moving party has met this initial burden, it shifts to the nonmoving party to make a sufficient showing establishing the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. In ruling on the plaintiff's motion, the court must accept the defendants' allegations as true, and state them in a light most favorable to them as they are found in the complaint, the affidavits, the depositions, and the interrogatories. *Garcia v. Miera,* 817 F.2d 650, 652 n. 1 (10th Cir. 1987), *cert. denied, Miera v. Garcia,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988).

The Baths argue that INA should be held liable for the acts of Trujillo and Bliststein because by filling out the forms that they submitted to INA they became its agents. Generally, an agency is a consensual relationship arising by express agreement or implication from the conduct of the parties. *Walter v. Moore,* 700 P.2d 1219, 1223 (Wyo. 1985). The court will not presume an agency relationship, and the party alleging such a relationship has the burden of proving its existence and its nature. *True v. Hi–Plains Elevator Machinery, Inc.,* 577 P.2d 991, 997 (Wyo.1978).

In opposing INA's motion, the Baths do not present any evidence that an express agency relationship existed between Trujillo, Blitstein and INA. They apparently rely on an implied agency theory, which is defined as " 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *True,* 577 P.2d at 999 (citing Restatement (Second) of Agency, § 1 (1957). In support of its motion, INA offers the affidavits of A.W. Scott Frayser and Philip R. Trujillo to show that INA exercised no control over Trujillo, Blitstein or other persons associated with the limited partnership investment. The element of control is one the Baths must establish to prove the existence of an agency. *True,* 577 P.2d at 999. The Baths, however, present no evidence that creates a genuine issue of material fact concerning this element of their case.

Additionally, The Baths' counterclaim based on agency is undercut by an estoppel letter they signed at the time they executed the indemnity agreement. That letter provides as follows:

> I understand and hereby acknowledge that neither the Surety named above nor any of its employees or agents are authorized, nor purport to act or speak in any way for the limited partnership or any of its principals or agents; and not a representative, principal or agent of the limited partnership is or will be authorized in any way to speak or act for the surety. This will further confirm that the surety named above, including its employees or agents, have no involvement whatsoever in the recommendation or sale of such investment to me, and that neither the surety nor any of its employees or agents have offered or given me any advice with respect to the merits or demerits of such investment, and that I am in no way relying upon the surety's willingness to grant the investor bond or any other communication from the surety or any of its employees or agents in making such investment.

Absent evidence that the defendants signed such a document under duress or that INA knew of the alleged fraud underlying the investment at the time the Baths signed the indemnification agreement, the Baths are estopped from asserting a counterclaim based on an agency theory. *See generally Hammelburger v. Foursome Inn Corp.,* 54 N.Y.2d 580, 431 N.E.2d 278, 446 N.Y. S.2d 917 (1981) (mortgagor waived certain defenses to a mortgage by signing an estoppel certificate).

■ The defendants ask that the court disregard the estoppel letter not for the above mentioned reasons, but because they failed to read it before executing it. In Wyoming,

> [t]he rule is that one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents.

*Laird v. Laird,* 597 P.2d 463, 467 (Wyo. 1979) (quoting *Sanger v. Yellow Cab Co.,* 486 S.W.2d 477, 481 (Mo.1972)). The defendants do not deny signing the estoppel letter nor do they present any evidence that they signed it under duress. Indeed, the evidence is to the contrary. They signed it willingly because they trusted Trujillo. Finally, there is no evidence that INA knew of the fraud allegedly perpetrated by Trujillo and Blitstein at the time the defendants signed the estoppel letter and the indemnity agreement. In a letter to INA, the defendants' counsel acknowledged that INA was an innocent party with respect to the limited partnership investment. Letter from Glenn E. Smith to J. Thomas Coolidge (May 27, 1986) (letter discussing the Baths' investment in the San Antonio Associates Limited Partnership). The defendants have not presented any new evidence suggesting a change in INA's status as an innocent party to the transaction at issue. The court finds it must grant INA's motion for summary judgment on the Baths' counterclaim for damages based on agency principles.

■ The same is true for their counterclaim based on a respondeat superior theory. Respondeat superior, or "let the master answer," imposes liability on an employer for the torts of its employees committed in the scope of their employment. There is no evidence whatsoever that Trujillo and Blitstein were employees of INA. The evidence is to the contrary. During most of Trujillo's relationship with the Baths, he had been an employee of the Masters Agency. At the time of the limited partnership investment he had formed a corporation known as Pro–Financial Securities, Inc.

Although Wyoming has not defined the elements of a "civil conspiracy," the Tenth Circuit, in applying Kansas law, has recognized the following elements of such a claim: " '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof.' " *McKibben v. Chubb,* 840 F.2d 1525, 1533 (10th Cir.1988) (quoting *Stoldt v. City of Toronto,* 234 Kan. 957, 678 P.2d 153, 161 (1984)). According to the Baths, the civil conspiracy consisted "among other things, of an agreement between INA and the Limited Partnership to seek indemnification exclusively from the Baths, even though ... the General Partner in fact indemnified INA for at least one installment payment that the Baths refused to make." Defendants' memorandum of law in opposition to plaintiff's motion for summary judgment at 21.

■ To withstand the plaintiff's motion, the Baths must present evidence that there was a meeting of the minds between INA and the general partner with respect to a course of action as well as evidence of an unlawful act committed by INA that proximately caused the Baths' being defrauded. The evidence presented by INA demonstrates that it participated in this transaction as a guarantor of the credit worthiness of the individual investors, the Baths. The transaction involved nothing more than issuing a guarantee bond to an investor who

chose to finance an investment in a limited partnership by signing a promissory note. The guarantee secured the note that would inevitably be assigned to a bank as collateral for a loan to the limited partnership. The indemnification agreement is typically required as a means by which INA, as a surety, protects itself in the event it must perform under its bond. This is a common transaction and there is no evidence suggesting that INA acted unlawfully in issuing its bond to Columbia Savings & Loan Association for which it required that the Baths sign an indemnification agreement. *See* Affidavit of A.W. Scott Frayser.

The Baths present no evidence that INA conspired with the general partner to seek indemnification exclusively from the Baths. It was part of the normal course of business for INA to enter into such an agreement with the Baths as investors financing an investment in a limited partnership. In the face of a motion for summary judgment, it is insufficient to assert a civil conspiracy merely because INA sought to protect itself from losses it might sustain as a result of an investor default on a note.

■ The court will also grant summary judgment on the defendants' counterclaim for breach of the covenant of good faith and fair dealing. This counterclaim is based on INA having originally filed this action in Pennsylvania. It is also based on its alleged failure to supervise Trujillo and Blitstein. The court has found that the Baths agreed to indemnify INA in the event it suffered losses due to their default on the note. In Wyoming a party does not breach a covenant of good faith and fair dealing by exercising its contractual rights. *Andrau v. Michigan Wisconsin Pipeline Co.*, 712 P.2d 372, 376 (Wyo.1986). Under the agreement, INA had the right to sue the Baths for indemnity in a Pennsylvania court, where because of the Pennsylvania choice of law provision, that state's law would be applied in resolving this dispute.

■ Finally, INA has moved for summary judgment on the Baths' "estoppel claim," which appears to be more of an affirmative defense than a counterclaim for relief. The defendants assert that INA is somehow "equitably estopped" from seeking indemnity from them. To prevail on such a defense, the defendants must present evidence showing that they (1) lacked knowledge of the facts; (2) were without means of discovering them; (3) relied upon actions of the party sought to be estopped, and (4) changed positions as a result of such action. *Cheyenne Dodge v. Reynolds & Reynolds Co.*, 613 P.2d 1234, 1236 (Wyo.1980) (citing *Wood v. Trenchard,* 550 P.2d 490 (Wyo.1976)). Between INA and the Baths, the Baths were in the best position to avoid the losses for which INA now seeks indemnity. The Baths admit they signed all the documents underlying the limited partnership investment. Although they assert they failed to read these documents, they were in a position to do so and thereby undeniably had the means to discover the relevant facts regarding their agreement with INA. Finally, there is no evidence that INA engaged in any action causing the Baths to change their position in reliance on such action. The Baths therefore are not entitled to rely on equitable estoppel as a defense to INA's claim to indemnity.

In accordance with this opinion, IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment against the defendants for indemnity in the amount of $20,979.88 be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment on its claim for declaratory relief be, and the same hereby is, GRANTED.

IT IS FINALLY ORDERED that summary judgment be GRANTED in favor of the plaintiff on all of the defendants' counterclaims.